IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| YOLANDA SALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. |
| ) | JURY DEMAND |
| INVENTIV HEALTH, INC. ) | |
| ) | Judge _____ |
| ) | Magistrate Judge _____ |
| ) | |
| Defendant. ) | |

## COMPLAINT

Comes now Plaintiff, by and through counsel, and alleges the following in her cause of action against Defendant: <u>Count One</u> - Violations of the Civil Rights Act of 1991, 42 U.S.C. 1981; <u>Count Two</u> - Violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; <u>Count Three</u>- Americans with Disability Act; <u>Count Four</u> - Violations of the Equal Pay Act; <u>Count Five</u> - Violations of the Tennessee Human Rights Act, T.C.A. §§ 4-21-101 *et seq.;* and, <u>Count Six</u> -Violations of the Tennessee Disability Act.

1. Plaintiff, Yolanda Sales, resides in Huntsville, Alabama.

2. Defendant, inVentive Health, Inc. is a Delaware corporation licensed to do business and doing business in Davidson County, Tennessee with its principal place of business located 1 Van de Graaff Drive, Burlington, Massachusetts 01803. Defendant can be served through its registered agent at Corporation Service Company, 271 Centerville Road, Suite 400, Wilmington, Delaware 19808.

1

## JURISDICTION AND VENUE

3. This action is brought under the Civil Rights Act of 1991, 42 U.S.C. 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e; the Americans with Disability Act; the Equal Pay Act; and, the Tennessee Human Rights Act, T.C.A. §4-21-101 *et seq* and the common law of the State of Tennessee.

4. This Court has jurisdiction under 28 U.S.C. 1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States.

5. This Court has jurisdiction under 28 U.S.C. 1343(4) to hear Plaintiff's claims to recover damages and to secure equitable relief under any Act of Congress providing for the protection of civil rights.

6. This Court has supplemental jurisdiction over all state law claims alleged in this complaint under 28 U.S.C. 1367 as there is a common nucleus of operative facts between state and federal law claims.

7. Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to this claim occurred.

## GENERAL FACTUAL ALLEGATION

8. Plaintiff is an African American female hired by Defendant in or about June 2006, as a specialty sales representative.

9. Defendant employs more than 500 employees in each of twenty (20) or more calendar weeks in the current or proceeding calendar year.

10. Plaintiff's job duties and responsibilities included administrative duties, territory management covering middle and eastern Tennessee to promote and sell medications offered by

Defendant.

11. Approximately six months into her employment, Plaintiff informed Defendant of her disability and the potential need for accommodations. Plaintiff informed her direct manager, Amy Hyde, and Mike Shafranski of her ADHD. Plaintiff has been diagnosed with ADHD. This condition inflicts upon Plaintiff the inability to focus, read, concentrating or otherwise engaging in conversations with physicians in order to perform her job functions. In addition, Plaintiff informed her manager and co-workers of her dyslexia.

12. Plaintiff described how the condition affected her to Ms. Hyde. As a result, Ms. Hyde would edit her emails, give her extra time to prepare for calls and allow Plaintiff to keep verbal post- and pre-call notes. Pre- and post-call notes were done by employees such as Plaintiff to document their meetings with physicians.

12. Notwithstanding the same, Plaintiff was able to receive a promotion, annual raises and several bonuses. Plaintiff's promotion was to the position of Senior Sales Representative. Plaintiff performed her job duties to the expectations of Defendant. In fact, Plaintiff received four bonuses every year based on sales performance.

13. In or about 2009 the positions of Senior Specialty Sales Representative, Founders Club, Recruiting and Sales Trainer became available. Plaintiff informed Defendant that she would be interested in the position and applied for the same. However, Plaintiff was passed over for a Caucasian female employee whom Plaintiff was just as qualified. Plaintiff was also denied the ability to participate in Founders Club and Recruiting and Training positions that were afforded Caucasian employees. Plaintiff complained to Ms. Hyde about her non-selection. In addition, Plaintiff complained to Amy Hyde and Mike Shafranski about her non-selection. Plaintiff informed both of these individuals that she felt her ADHD and dyslexia were the reason

she did not receive the promotion. Ms. Hyde informed Plaintiff that Shawn Fatolhie, the contractor, stated to her that he "didn't want somebody like her [Plaintiff]" representing the company.

14. Subsequent to this, Plaintiff began receiving bad evaluations from Ms. Hyde and Sharon O'Sullivan, her direct managers. Her managers began grading her low in areas directly affected by her ADHD and dyslexia such as organization, pre-call planning, territory management, post call analysis and communication with physicians. Plaintiff had always received good scores in the past in these areas.

15. Plaintiff, during this time, also endured unnecessary pressure in the performance of her duties that other non-disabled Caucasian male sales representatives did not. Plaintiff was forced to participate in exercises that her dyslexia prevented her from succeeding in, they would arbitrarily search her bags while at work, her managers would speak negatively about Plaintiff to her co-workers causing depression, anxiety and hostility in the workplace.

16. Plaintiff again complained to her managers, Hyde and O'Sullivan, about these hostilities since her complaint about founders club, equal pay and the promotion process. During this same time period, Plaintiff was being informed by co-workers that her manager, O'Sullivan, was "looking for a reason to fire" her while at the same time changing certain work procedures.

17. In or about 2010, Plaintiff was diagnosed with depression. Plaintiff told Ms. Hyde about her depression. Ms. Hyde mentioned to Plaintiff that she should take long term disability leave. Plaintiff declined the leave. This depression prohibited Plaintiff from caring for herself and her child. In addition, the depression prevented Plaintiff from working and she began using sick days.

18. Plaintiff had always made known her desires to move up in the company. After

4

her reporting of depression, however, Ms. Hyde reiterated Mr. Fitolli's statement that he didn't want somebody like Plaintiff representing the company at higher levels.

19. Additionally, in 2010, Plaintiff began being micro-managed by Ms. Hyde and Ms. O'Sullivan. These managers would change her prepared presentations to physicians at the last minute. Plaintiff would spend significant time preparing presentations for the physicians she would call upon. When Plaintiff would arrive at the physicians' office with her manager, each manager would give her a new presentation to make at the last minute. This happened continuously throughout the year. This would cause a negative reflection on her performance evaluations.

20. In or about January of 2011, Plaintiff was diagnosed with anxiety. Her treating physician diagnosed her anxiety as a result of the hostile work environment she was in.

21. On or about February 9, 2011, Plaintiff was placed on a conference call with Human Resources, O'Sullivan, Shafranski, and Miller and accused of leaving BRC cards behind at physicians' offices and promoting her real estate business while in physicians' offices.

22. Plaintiff was asked by Mike Shafranski, National Director of Sales, why she believed she was being treated this way. Plaintiff informed him that she thought it was because of her race and/or disability.

23. Plaintiff was terminated even though she had not been put on coaching plans as caucasian non-disabled employees had been in the past. Coaching plans were implement with employees who appeared to have performance deficiencies in the execution of their job responsibilities. Furthermore, Defendant did so without a complete investigation.

24. Plaintiff was not afforded these coaching opportunities after her complaint of the Founders Club, equal pay, and recruiting and training.

5

25. In addition, throughout her employment, Plaintiff was paid less than her male counterpart for performing the same quality and quantity of work. The disparity in compensation was due to Plaintiff's gender. In fact Defendant had taken the position that Plaintiff was one of its "top performers."

## COUNT ONE
### Violations of the Civil Rights Act of 1991, 42 U.S.C. 1981
### Against Defendants

26. Defendant's conduct described herein and failure to promote and terminate Plaintiff violated the Civil Rights Act of 1991, 42 U.S.C. 1981.

27. Defendant acted intentionally, recklessly, or maliciously when they investigated, disciplined, failed to promote, and discharged Plaintiff in violation of the Civil Rights Act of 1991.

28. Defendant's discipline, non-selection and constructive discharge of Plaintiff was a part of a knowing and intentional pattern of discrimination in violation of the Civil Rights Act of 1991.

29. As a direct and proximate result of Defendant's violation of the Civil Rights of 1991, Plaintiff has suffered and continues to suffer loss of income and other employment benefits, and suffered and continues to suffer distress, humiliation, embarrassment, and emotional pain along with other damages.

## COUNT TWO
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e

30. Plaintiff filed her charge with the EEOC and demanded his Right to Sue Letter.

31. Defendant has more than 500 employees.

32. During all times complained herein, Defendant was an employer under the terms of Title VII of the Civil Rights Act, 42 U.S.C. 2000e (b) and (f), and as such, they are subject to the

rule, regulations and penalties of this law.

33. Defendant denied Plaintiff the opportunity to be employed under standards which were afforded other employees.

34. Defendant engaged in, condoned, and ratified harassing and discriminatory conduct of its employees which resulted in racially hostile work environment.

35. Defendant is directly or vicariously liable for retaliation under Title VII which results from the discriminatory practices and policies of its employees.

36. This discrimination on the part of Defendant constitutes a violation of the Plaintiff's rights under Title VII.

37. The discriminatory employment practices, described herein, have caused Plaintiff to experience harm, including loss of compensation, wages back and front pay, and other employment benefits. Plaintiff has further suffered emotional distress, humiliation, indignity and resulting injury and loss along with other damages.

## COUNT THREE
### Violations of the Americans with Disability Act and the Tennessee Handicap Act

38. The conduct described herein constitutes unlawful discriminatory practices on the part of Defendant in violation of the Americans with Disability Act and Tennessee Handicap Act.

39. Defendant is a "person" as defined by the Americans with Disability Act and the Tennessee Handicap Act.

40. Defendant did segregate or classify Plaintiff based upon her disability in a way that would tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee.

7

41. Defendant's decision to terminate Plaintiff and treat her less favorably than her non-disabled counterparts resulted from a knowing and intentional pattern of discrimination in violation of the Americans with Disability Act and the Tennessee Handicap Act.

42. As a direct and proximate result of Defendant's violation of the Americans with Disability Act and the Tennessee Handicap Act, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages.

## COUNT FOUR
### Violations of the Equal Pay Act

43. The conduct described herein constitutes unlawful discriminatory practices on the part of the Defendant in violation of the Equal Pay Act, 29 U.S.C. 206(d).

44. The Defendant is a covered employer as defined in 29 U.S.C. 206(d)(1) and 29 U.S.C. 203(d).

45. Plaintiff is an employee as defined in 29 U.S.C. 203(e).

46. During her employment, Plaintiff had engaged in equal work to her male counter parts. This equal work included equal skill, equal effort, and equal responsibility under similar working conditions.

## COUNT FIVE
### Violations of the Tennessee Human Rights Act Against Defendants

47. The conduct described herein constitutes unlawful retaliatory practices on the part of Defendant in violation of the Tennessee Human Rights Act, T.C.A. §4-21-101 *et seq*.

48. Defendant is a "person" as defined by the Tennessee Human Rights Act.

49. Defendant did segregate or classify Plaintiff based upon her reporting in a way that would tend to deprive her of employment opportunities or otherwise adversely affect her status as

an employee in violation of T.C.A. §4-21-401.

50. Defendant's discipline, non-selection and termination of Plaintiff resulted from a knowing and intentional pattern of retaliation in violation of the Tennessee Human Rights Act.

51. As a direct and proximate result of Defendant's violation of the Tennessee Human Rights Act, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages.

**WHEREFORE**, Plaintiff prays:

1. For a jury to be empaneled and a judgment of compensatory damages to include Front pay, back pay and emotional suffering as well as correcting her personnel file to remove her status as terminated;

2. Punitive damages;

3. Attorney's fees and the cost of litigation to include expert fees;

4. Damages for humiliation and embarrassment;

5. All other remedies and injunctions as are necessary and proper to eliminate the discriminatory practices of Defendants;

6. A judgment against Defendants for prejudgment interest; and

7. Such other relief as this Court deems proper.

Respectfully submitted

**ALLMAN & ASSOCIATES**

_____
Andy L. Allman, # 17857
103 Bluegrass Commons Blvd
Hendersonville, Tn. 37075
(615)824-3761
(615) 264-2070